CaRUTHERS, J.,
delivered the opinion of the Court.
This case comes up on the action of the 'Chancellor, upon demurrers to the original and cross bills, by which most of the important questions in the case were settled. This under the Code was a proper case to allow an appeal before final decree. The demurrers were to parts, and not the whole, of the bills, and answers were filed to the other parts.
It will be necessary to present some, of the facts, in order to understand the questions which arise.
Samuel Winston died in Williamson county, in 1851, leav *730 ing a widow, who afterwards, married complainant, Stephenson, but no children. He owned valuable real estate, seventy slaves, and other personal property. He made his will in 1845, with a codicil in 1851, just before his death. The defendants, Harrison. and Preyuer, were appointed, and qualified executors.
He provided amply for Ms wife, and gave to all his slaves their freedom, at her death. In the will of 1845, he says : “I give and bequeath to my wife, Susannah Winston, all my property both real and personal, during her life, including any money on hand, or notes, or accounts due me, to dispose of as she may need for the use of the family, except my tract of land near Spring Hill, and my house and lot in Spring Hill, and my lots in Franklin.”
The land and lots excepted, are directed to be sold on a credit, and the consideration, when collected, to be “ deposited in the Planters' Bank at Franklin, and also the amount of money and debts due me, reserving to my wife any of the last mentioned money, that she may need for the use and benefit of my negroes, during her life, and at her death, it is my will that all my slaves be set free,” and that the county court appoint some good disinterested man to make the necessary arrangements for taking them to Liberia, to be paid out of the money to be received for the sale of the lands and lots.
The balance of that fund to be used, as far as may be necessary, to pay their expenses to Liberia, and whatever may. be left, to be divided equally among the slaves. He then makes some provision in relation to such as refuse to go, but this is revoked by the codicil, and all are required to go to Liberia. He also makes some changes as to the funds, as follows :
“ I will and direct, that all my money which shall be deposited in the Bank b^ my executors, as in my will is directed, shall be applied, used and appropriated by my executors to the same object, and to the same uses and purposes as the money arising from my Spring Hill tract of land is willed and directed to be used in my will of March 24, 1845.”
*731 It should have been noticed, that in the will of 1845, as a further provision for his wife, he gave her the tract of land on which he lived, $1000 in cash, twenty shares of stock in the Columbia turnpike road, all his household and kitchen furniture, and all the rents and profits of his lands and negroes during her life, and then to dispose of as she saw fit. This of course does not apply to the slaves, or the land and lots directed to be sold, and specially applied, nor to the fund reserved for the slaves, but only to such property as is given to her absolutely. He also makes a further provision in re-* lation to his slaves, to the effect, that if the county court refuse to appoint a man to carry out his purpose, his executors shall do so, and says : “ the money so deposited in the bank, from the sale of my land and lots, together with any remaining money of my estate that is not otherwise disposed of, after all expenses are paid, to be divided equally with my negroes that go to Liberia.”
It will be seen that the' predominant idea and purpose in the mind of the testator, was the emancipation of his slaves, after they had served his wife during her life. So in relation to such of his money and property as he thought not required for her ample support and maintainance, with a reasonable portion to dispose of as she pleased, he desired his slaves to have its benefit when freed.
The original bill was filed February, 1858, and the amended or supplemental bill on the 7th of April following. By the last, the slaves were made defendants. They answered, and then filed their cross bill by next friend, insisting upon the protection of their rights against the claims set up by the complainants, to the profits that may have been made by the executors, on the funds.
The object of these bills, is to have the will construed, and the rights of complainant, Susannah, declared in relation to the money directed to be deposited in Bank. It is stated that at the death of testator, there was about $4,000 of cash on hand, then on deposit in the bank, and good notes to collect, *732 of about $12,000. It is further charged, that a large amount was realized by the executors for the property at Spring Hill and the sale of other property, and the executors, instead of continuing it in hank, as directed by the will, had used it in loaning at usury, and shaving notes, by which a large amount of profit had been realized by them. This is claimed by the complainants in the original bill, and also for the slaves in the cross bill.
The effect of the action of the court upon the demurrers, sis, that according to the will, the slaves, when the time arrives for their emancipation, will be entitled to this fund; and that any profit made upon it, whether contrary to, or in accordance with their duty, by the executors, must be added to the fund for their benefit. Whether this is a correct construction of the will, is the only question now to be decided, except the preliminary one upon the cross bill of the slaves, as to their right until they are freed, or as to matters connected with and incidental to a suit for freedom, to occupy a standing in court.
As to this last point, we are referred to some cases in Wheeler on Slavery, and some positions and citations in Cobb’s recent work on that subject, which would seem to go to the extent of the argument, that is, that slaves, while in that condition, cannot come into a court, except to assert the right to freedom, and the incidents thereto. If those authorities are to be so understood as to exclude them from the courts, in a case like that now before us, we cannot adopt them. Here is a certain right to liberty given, but the time of its enjoyment is postponed until the happening of a future certain event. Connected with this bequest of freedom, there are certain rights of property, or money given. How are these to be protected, but by the slaves, through a next friend ? It is admitted that if the prospective right to freedom is endangered by sale, or an attempt to remove the slaves, or even by the loss of evidence, the threatened injury may be prevented by an appeal to the courts. Why does not the same principle' extend to a case like this, where the fund provided for their enjoyment, *733 when the day of freedom comes, is endangered by the claim of another ? Suppose the case to be, that the beneficent provision made by the master, and placed under the control of trustees until the period for emancipation arrived, was about to be wasted and lost, by the fraud or mismanagement, or insolvency of the trustee, could notthebenificiaries appeal to the courts before the termination of their temporary and limited bondage ? Surely there can be no principle that would prevent it. It would be entirely inconsistent with our liberal slave and emancipation Code, let others bea^ they may. The principle contended for in support of the demurrer on this point can only apply to suits against the master, or perhaps, others in relation to property disconnected with the claim of freedom. No other suit but for freedom, in which may be embraced claims to property, can be brought by slaves, while they are such, except where rights may be endangered, which are connected with a certain grant of freedom, to take effect in future. And this being that kind of case, the slaves have a standing in court.
The court in its action, upon the various demurrers, so construed the will as to deny the claim of Mrs. Stephenson to any right in profits made upon the fund arising from the Spring Hill property, and for that reason refused her an account. ¥e think this was clearly right. It was not the intention of the testator that this fund should be used by any one, but to remain in bank, securing for the slaves, at the death of the widow. But if any profit was made upon it by the executors, it would constitute an addition to the fund for the same purpose. It was an accumulation that must go with the fund, whether made with or without authority. The trustees can have no benefit from it themselves, nor can it be sep-. arated from the fund for the benefit of any one else. So, the court was right in overruling the demurrer to the part of the bill of the slaves, which made a claim to these accumulations. We think the codicil places the other funds directed to be deposited in bank, precisely upon the same ground, as that derived from the Spring Hill property. That is, it is to enure *734 to the benefit of the slaves at the death of their mistress, except so far as it may be necessary to the support of the family, including the slaves, after applying the proceeds of their labor, and the rents of lands. There can be no distinction in relation to these funds, upon a fair construction of the whole will. Whatever profit the executors may have made upon these funds must be accounted for, not for the benefit of the widow, but for that of the slaves. It will be regarded as an accretion of the fund, and go with it to the slaves upon-their emancipation. The case will remain in court until that time arrive^ for such orders as may be necessary, from time to time, for its protection. It will be for the court to determine whether it should remain inactive, or be made to accumulate in some safe mode under the direction and control of the Chancellor.
As to the boy, Bill, if it turns out upon investigation, that he was the property of the testator, as would seem to be the case according to the statements of the bill, his past hire, and future use will belong to the complainants in the original bill. They are also entitled to any rents that may have been received by the executors, and such as may accrue in future during the life of Mrs. Stephenson.
Such being the rights of the parties, the case will be re- ■ manded that they may be carried out and secured.